In re the Marriage of Beverly Jean ANDERSEN, Petitioner, Respondent,

v.

Marvin Earl ANDERSEN, Appellant.

No. C9–85–615

Court of Appeals of Minnesota.

Sept. 17, 1985.

Robert Walter, Glenwood, for respondent.

Robert W. Bigwood, Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner, Fergus Falls, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and PARKER and LESLIE, JJ.

## OPINION

LESLIE, Judge.

This appeal is from an amended dissolution judgment and decree and from an order denying appellant's suggested amendments to the judgment or, in the alternative, a new trial. The court, in a bifurcated proceeding, earlier entered judgment dissolving the marriage, reserving the issues of property division and maintenance. We reverse and remand.

## FACTS

Appellant Marvin and respondent Beverly Andersen were married in 1972. At the time of the marriage, Marvin had a vendee's interest in a contract for deed on 320 acres of farmland in Grant County which he farmed himself. He entered into this contract for deed in 1964, paying $5,000 down. The contract called for an annual payment of $1,000 on a total purchase price of $46,000. At the time of the marriage, he had paid $12,000 on the contract. A balloon payment of $32,000 was due in November, 1974.

The Andersens took out a mortgage loan from the Federal Land Bank in January, 1974, to pay the remaining balance. They paid off the Federal Land Bank loan, and a mortgage loan from a local bank, in part by selling off 80 acres of land. The Andersens later took out a new loan from the Federal Land Bank, on which they currently owe $51,700, and which is secured by a mortgage on the property.

Marvin suffered a heart attack in 1977 and stopped farming. He has since been

renting out the tillable land for $65 an acre, or $13,000 per year for the approximately 200 acres of tillable land. Beverly has been employed full-time as a cook by various restaurants since Marvin's heart attack. Marvin has not worked since 1983. The Andersens made a number of improvements on the house during the marriage, including a kitchen addition, entryway, living room addition and new insulation. The parties have agreed that at the time of the marriage the value of the homestead, then consisting of 320 acres, was $73,560. The trial court applied the value per acre derived from this figure, and found the value of the 240 acres remaining at the time of the trial to have been $56,920 at the time of marriage.

Beverly submitted the appraisal and supporting testimony of Myron Dixon, a local appraiser, who valued the homestead at $304,300. He based this valuation on a figure of $1,200 per acre for the cropland and $30,000 for the building site. Marvin submitted three appraisals by deposition following trial. Although these depositions were not considered by the court in drafting the judgment and decree, apparently due to misfiling, they were considered in deciding the motions for amended judgment. These three appraisals fell between $160,800 and $179,700.

The trial court adopted the appraisal made by Myron Dixon of $304,300 current value. It applied the formula from *Woosnam v. Woosnam*, 587 S.W.2d 262 (Ky. 1979), approved by the supreme court in *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn. 1981), and arrived at the following calculations:

| | |
|---|---:|
| Present Value | $304,300 |
| Less Encumbrances | 51,740 |
| Present Value of Real Estate | $252,560 |
| Value of 240 acres at time of marriage | $ 56,920 |
| Respondent's contribution of non-marital property | 12,000 |
| Value of property now | $304,300 |
| Value of property at time of marriage | 56,920 |
| Equals a ratio of | 5.3460998 |

Respondent's contribution $12,000 x 5.3460998 = present value of spouse's non-marital share, $64,153.20

| | |
|---|---:|
| Net value of asset | $252,560.00 |
| Less Respondent's present value of his non-marital share | 64,153.20 |
| Net marital property of parties in real estate | $188,406.80 |
| Award 50% of marital property to Petitioner | $ 90,203.40 |

Marvin was awarded the homestead property.

The court ordered Marvin to pay $15,000 of the marital property award immediately and the balance within 60 days, with 10% interest on the unpaid balance. The court awarded Beverly attorneys fees of $1,500. No maintenance was awarded.

## ISSUES

1. Was there an abuse of discretion in the characterization, valuation or distribution of the marital and non-marital interests in the homestead?

2. Did the court abuse its discretion in awarding attorneys fees?

## ANALYSIS

### I.

It is undisputed that the 320-acre homestead was Marvin's non-marital contribution. The value of the property at the time of marriage is also agreed by the parties to have been $73,560. Marvin contends, first, that the court erred in finding any marital interest in the homestead. If such an interest is to be found, he contends that the court erred in calculating it.

█ The statute defines "non-marital property," in part, as property which

(b) is acquired before marriage;

(c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), and (e);

Minn.Stat. § 518.54, subd. 5 (1984). The fact that property is owned by one of the parties before marriage does not prevent the court from characterizing part of its appreciation in value as marital property,

where there has been during the marriage an increase in value not solely attributable to inflation. *Quinlivan v. Quinlivan*, 359 N.W.2d 276, 280 (Minn.Ct.App.1984); *cf., Berry v. Breslain*, 352 N.W.2d 516 (Minn. Ct.App.1984) (no marital interest where increase due solely to inflation).

There is no merit to Marvin's argument that the entire value of the homestead is his non-marital property. Although some cases involve an *exchange* of individually-owned property at the time of marriage for property taken in some form of joint ownership, *see, e.g., Schmitz v. Schmitz*, 309 N.W.2d at 748, such an exchange or transfer to joint ownership is not required for there to be a marital interest. *Quinlivan v. Quinlivan* (marital interest recognized although homestead owned by wife and covered by antenuptial agreement). Here Beverly made substantial contributions, not only to the improvements, but also to the mortgage payments, regardless of whether her earnings went directly towards that expense.

Marvin also contends that the trial court erred in its calculation of the marital and non-marital interests, in the following respects: 1) by limiting his non-marital contribution to the payments actually made rather than the total equity at the date of marriage; and 2) in valuing the property at marriage based on 240 rather than 320 acres. We agree.

The *Woosnam/Schmitz* formula for apportioning marital and non-marital interests depends on three variables: 1) the non-marital contribution; 2) the value of the property at the time of the marriage; and 3) the present value of the property. *Schmitz*, 309 N.W.2d at 750.

The court valued Marvin's non-marital contribution at only $12,000, the amount of principal he had paid on the contract for deed. He should have been credited with the total equity in the homestead at the time of the marriage, including appreciation up to that point. Since the statute and the *Woosnam/Schmitz* formula both rec-

ognize appreciation in non-marital assets as non-marital property even if occurring *during* the marriage, it follows that *pre-marital* appreciations must be non-marital property. Marvin should have been credited with the increase in value from 1964 until the marriage in 1972.

Marvin also contends that the court erred in limiting the value of the property at the time of the marriage to the 240 acres later retained. Since we find that the value of his non-marital contribution must be calculated based on the 320-acre figure, we agree. We note that the trial court's formulation was favorable to Marvin since it credited his non-marital interest with the full appreciation rate occurring during marriage, without the effects of the Andersen's management of the property, particularly the loss of 80 acres.

The trial court has broad discretion in the division of marital property. *Filkins v. Filkins*, 347 N.W.2d 526 (Minn.Ct.App. 1984). The court here, however, misapplied the *Schmitz* formula by excluding pre-marital appreciation from the value of appellant's contribution. Futhermore, since that value must be determined based on the fair market value of the 320-acre tract at the time of marriage, it was inappropriate to use the 240-acre value to determine the rate of appreciation to apply to that non-marital contribution.

The trial court has broad discretion in the valuation of assets in a dissolution action. *Castonguay v. Castonguay*, 306 N.W.2d 143 (Minn.1981). The court's acceptance of the appraisal by Dixon, who was the most experienced of the appraisers and submitted the most comprehensive appraisal, was well within its discretion.

Marvin's non-marital contribution was $39,560 ($73,560 less the $34,000 mortgage). The proper application of the *Woosnam/Schmitz* formula would result in a non-marital interest of $163,650. The remainder of the equity in the homestead, $88,910, would be the marital interest. Un-

der the trial court's 50/50 apportionment, Beverly would receive $44,455. Since this is a considerable reduction from the court's award of $94,000, we remand to the trial court for possible reconsideration of the division of marital property, within the court's discretion, or an apportionment of non-marital property if the court were to find undue hardship.

Beverly concedes that the statutory interest rate of 9% should have been applied to the judgment. *See* Minn.Stat. § 549.09, subd. 1 (1984).

## II.

 The trial court has broad discretion in ordering the payment of attorneys fees in a dissolution action. *Bogen v. Bogen,* 261 N.W.2d 606 (Minn.1977). The statute requires the court to consider the financial resources of both parties before ordering the payment of a "reasonable amount" of attorneys fees. Minn.Stat. § 518.14 (1984). Here there was no itemized record of the services provided. Attorneys fees may be awarded, however, based on the court's observation of the services performed. *Larson-Roberts Elec. Co. v. Burdick,* 267 Minn. 486, 127 N.W.2d 163 (1964). The fees awarded were reasonable, and not beyond Marvin's financial resources, particularly with the correction in the property division.

## DECISION

The trial court erred in application of the formula for separation of marital and non-marital interests in the homestead. We remand for an application of the formula in accordance with this opinion, for a possible reconsideration of the marital property, or apportionment of the non-marital interest, in the discretion of the trial court, and for a reduction of the interest rate to 9%.

There was no abuse of discretion in the award of attorneys fees.

Reversed and remanded.