In re the Marriage of Lawrence E.
SCHMITZ, petitioner, Appellant,

v.

Violet E. SCHMITZ, Respondent.

No. 51500.

Supreme Court of Minnesota.

Aug. 28, 1981.

Robert M. Spector, Minneapolis, for appellant.

Steven H. Berndt, Minneapolis, for respondent.

OTIS, Justice.

Lawrence E. Schmitz, petitioner in this action for dissolution of marriage, appeals from a judgment awarding certain property to respondent Violet E. Schmitz. The principal issue on appeal is whether the trial court erred by finding that the parties' homestead was in part a marital asset even though the downpayment on it was made with funds from the sale of a premarital asset belonging solely to Lawrence Schmitz. We conclude that the trial court's findings on this and other issues are not clearly erroneous and that the trial judge applied correct legal principles in arriving at a disposition of the parties' property. Accordingly, we affirm.

Lawrence and Violet Schmitz were married in January 1973. It was a second marriage for both, each having been predeceased by a prior spouse. Both had minor children from their prior marriages. Because they did not wish to disrupt their children's schooling the parties did not commence residing together until the summer of 1973. At that time they purchased, as joint tenants, a duplex in northeast Minneapolis for $38,000, paying $8,000 down and giving a mortgage for the balance. The downpayment was derived from the proceeds of the sale of Lawrence Schmitz' previous homestead and throughout the mar-

riage he made the mortgage payments using the rental income from the other unit of the duplex. At the time of trial the homestead had a market value of $79,300 and was subject to a mortgage of $25,704.25. Rental income was $265 per month.

Throughout the marriage the parties performed their own household tasks, were responsible for their own children and kept their finances separate. The only noteworthy domestic exchange was that Lawrence Schmitz purchased food for the entire household and Violet Schmitz cooked a main meal each day during the work week for everyone. Both parties owned and maintained their own automobiles. Most of the household furnishings belonged to Violet Schmitz before the marriage or were purchased by her with her earnings during it. Violet Schmitz attended Augsburg College during the marriage and was a senior at the time of trial. She paid her educational expenses from her own funds.

Lawrence Schmitz' gross income from wages as a bricklayer was $86,656.85 for the entire 6 years of the marriage. He also received disability benefits from the Veterans Administration and insurance proceeds for his minor children. Violet Schmitz' gross income from wages as a factory worker and a cook was $22,966.03. She received social security benefits for her minor child. Violet Schmitz also received two inheritances during the marriage—$31,000 from her first husband and $7,400 from her mother. She gave $7,000 to her oldest daughter and retained the remainder partially in a savings account and partially in municipal bonds. The combined value of these assets with interest was $38,701.95 at the time of trial.

During the marriage the parties purchased two unimproved lots in Florida as joint tenants. The first was bought in February 1973. It has a current market value of $4,360, the amount of its purchase price, and a mortgage balance of $1,771.51. The second was purchased in December 1973. It has a current market value of $7,440, the amount of its purchase price, and a mortgage balance of $3,858.99. Violet Schmitz contributed $500 toward the downpayment on the second lot. She also made three payments on the lots totalling $189.

These facts were presented to the trial court in part by stipulation and in part by oral testimony. The trial judge awarded each party the personal property in his or her possession. Lawrence Schmitz was awarded the homestead and the Florida lots. Violet Schmitz was given a mortgage of $19,489 on the homestead. That sum represents her share of the increase in equity in the homestead plus her contributions to the purchase of the Florida lots. Lawrence Schmitz moved for an amended order or a new trial claiming that the homestead was a nonmarital asset, that if the homestead was not a nonmarital asset he was entitled to share in the interest earned by Violet Schmitz' inheritance which was also not a nonmarital asset, and that he should receive certain items of personal property. The trial court denied these motions except in minor respects and this appeal followed.

Minn.Stat. § 518.54, subd. 5 (1980) provides that all property acquired during the existence of a marriage is presumed to be marital property regardless of whether the title is held individually or in co-ownership. It further provides that the presumption is overcome by a showing that the property is nonmarital property:

"Non-marital property" means property real or personal, acquired by either spouse before, during, or after the existence of their marriage, which

(a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse;

(b) is acquired before the marriage;

(c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e);

(d) is acquired by a spouse after a decree of legal separation; or

(e) is excluded by a valid antenuptial contract.

Appellant argues that the homestead qualifies as nonmarital property because it was acquired in exchange for an $8,000 down-payment derived from the sale of property owned by him before the marriage. He contends that, therefore, he is entitled to the entire increase in equity.

Appellant relies on *Woosnam v. Woosnam*, 587 S.W.2d 262 (Ky.1979) in which the court considered a similar but slightly more complicated question. In that case the wife owned a house subject to a mortgage at the time of her marriage. The parties subsequently sold it and reinvested the proceeds in another homestead. The court held that the wife's nonmarital interest in the first house was the proportion her net equity at the date of the marriage bore to the value of the property at the date of the marriage. Her nonmarital interest in the second house was the proportion her interest in the first house bore to the purchase price of the second house multiplied by the value of the second house at the date of separation.

In this case the trial court treated the homestead as comprised of both marital and nonmarital interests. It found:

> The present value of the homestead is $79,300.00, subject to a mortgage of approximately $25,700.00, with a net value of $53,600.00. Petitioner used non-marital property in the amount of $8,000.00 to purchase the same, and title was placed in the names of petitioner and respondent as joint tenants. The homestead has more than doubled in value since its purchase. Deducting $16,000.00 from the present net value of $53,000.00 leaves an equity of $37,600.00 of marital property, or $18,800.00 for each spouse.

This reasoning is basically in accord with the analysis in *Woosnam* which we approve. Had the trial court strictly applied the *Woosnam* formula appellant would have received less than $1,000 more than the actual award to him. Given this minimal discrepancy in an area of law committed in large part to the discretion of the trial court we are not persuaded that any reversible error occurred.

■ Although the homestead has both marital and nonmarital aspects respondent's savings account and municipal bonds are clearly nonmarital assets within the meaning of the statute. Respondent inherited cash from her first husband and from her mother. With part of the money she purchased municipal bonds and with another portion she established a savings account which has accrued interest. We find no basis for appellant's argument that these assets or their accretions during the marriage are marital property.

■ We have considered appellant's arguments that respondent was erroneously awarded certain personal property and that a new trial should have been granted. We have made clear that distribution of household goods and furnishings will only be overturned upon a showing that the trial court abused its discretion. *Bogen v. Bogen*, 261 N.W.2d 606 (Minn.1977). The record does not suggest that any such abuse occurred here or that appellant had inadequate opportunity to present his case such that he should now receive a new trial.

The parties have stipulated that the judgment of the district court be amended to order respondent to issue to appellant quit claim deeds or other documents necessary to transfer title to real estate awarded to petitioner by the judgment. We affirm the judgment of the district court as so modified.

Affirmed.