In re Lawrence A. SENSKE,
Petitioner, Respondent,

v.

Deanna D. SENSKE, Appellant.

No. C3–01–2209.

Court of Appeals of Minnesota.

May 28, 2002.

Samuel Wertheimer, Little Canada, for respondent.

David Gronbeck, Law Offices of David Gronbeck, Minneapolis, for appellant.

Considered and decided by SHUMAKER, Presiding Judge, WILLIS, Judge, and FOLEY, Judge.

## OPINION

FOLEY, Judge.*

Appellant challenges the district court's decision that respondent retained a nonmarital interest in a home's equity even after the property was refinanced. Appellant also argues that, because the equity no longer has a nonmarital component, the Schmitz formula, used to determine what portion of an increase in a property's value is nonmarital, is inapplicable. Both parties challenge the district court's calculation of the cash settlement. Because we find that the Schmitz formula does not apply, we reverse and remand for calculation in accordance with this opinion.

## FACTS [1]

Respondent Lawrence Senske was the sole owner of a home for 27 years. Appellant Deanna Senske lived with respondent in the home before the parties' marriage on March 10, 1998. At the time of the marriage, the home had a fair market value of $63,580 and respondent had $50,690

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The parties have stipulated to the facts of this case.

in equity. Soon after the marriage, the parties refinanced the home for its total market value and the proceeds were used to purchase furniture and install a new roof, to fund some home remodeling, and to pay off appellant's nonmarital debt of $6,483. The parties agree that this loan was used jointly while they resided together.

The parties separated in June 2000, and respondent filed for divorce. Respondent was awarded temporary possession of the home. In violation of a court order, appellant entered the home, removed furniture and electronics, and vandalized the home.

After a trial at which no evidence was entered on the amount of the refinancing proceeds that were used for the new roof and for remodeling, the district court entered an order for dissolution and division of property. At that time, the home's fair market value was $79,520 with $20,520 in equity. The district court awarded respondent the homestead, and also determined that, at the time of the marriage, respondent had an 80% nonmarital interest in the equity of the home.[2] The court found that respondent retained this nonmarital interest after the property was refinanced. Accordingly, the district court awarded respondent $16,416, which represented 80% of the current $20,520 in equity. The district court considered the remaining $4,104 in equity to be marital property and divided it between the parties, giving each $2,052.

The district court also apportioned part of appellant's 401K plan. Appellant removed $5,198 from the plan during the separation and the district court ordered her to pay respondent $2,599, representing half of this amount. The district court further ordered appellant to reimburse respondent an additional $1,160 for unpaid mortgage, $456 for unpaid utilities, and

$1,000 as a sanction for violating the temporary order, for a total of $5,215.

The district court determined that appellant was entitled to $4,651 in the settlement: the total of half the marital equity, $2,052, plus half the disputed 401K money, $2,599. It then subtracted the amount appellant owed respondent, $5,215, from this number and ordered that appellant pay respondent $564 as a final cash settlement.

This appeal followed.

## ISSUES

1. Does the Schmitz formula apply when the parties refinanced the home for its entire market value and none of the proceeds was put into the new equity?

2. Did the district court err in calculating the cash settlement?

## ANALYSIS

### I. Application of Schmitz Formula

■ Whether property is marital or nonmarital is a question of law, but we defer to the district court's underlying findings of fact. *Olsen v. Olsen,* 562 N.W.2d 797, 800 (Minn.1997). All property, "real or personal," acquired during a marriage is presumed to be marital property. Minn.Stat. § 518.54, subd. 5 (2000). This presumption is overcome by showing that property is nonmarital, meaning any real or personal property,

acquired by either spouse before, during, or after the existence of their marriage, which

* * *

(b) is acquired before the marriage;

---

2. $50,690 is 80% of $63,580.

(c) is acquired in exchange for or is the increase in value of property which is described in [clause (b) ].

*Id.*

The district court determined that respondent had a nonmarital share in the home's current equity and relied on the principles set forth in *Stroh v. Stroh,* 383 N.W.2d 402 (Minn.App.1986), and *Schmitz v. Schmitz,* 309 N.W.2d 748 (Minn.1981), to calculate his nonmarital percentage. These cases outline a formula to correctly apportion an increase in equity for property having both marital and nonmarital components.

The Schmitz formula has been summarized as follows:

> The present value of a nonmarital asset used in the acquisition of marital property is the proportion the net equity or contribution at the time of the acquisition bore to the value of the property at the time of purchase multiplied by the value of the property at the time of separation. The remainder of the equity increase is characterized as marital property * * *.

*Brown v. Brown,* 316 N.W.2d 552, 553 (Minn.1982). Appellant argues that the formula does not apply because respondent no longer had a nonmarital interest in the home's equity after the property's mortgage was refinanced.

No Minnesota case has specifically examined whether the Schmitz formula applies in this particular situation, when previous nonmarital equity has been extinguished by refinancing during the marriage. In *Schmitz,* the supreme court first used the formula to determine the nonmarital portion of increased homestead equity that had "both marital and nonmarital aspects." 309 N.W.2d at 750. The courts have continued to use the formula for property having marital and nonmarital components. *See, e.g., Brown,* 316 N.W.2d at 553 (formula used to "correctly appor-

tion the increase in equity between marital and nonmarital assets"); *Freking v. Freking,* 479 N.W.2d 736, 739 (Minn.App.1992) ("[t]he *Schmitz* formula apportions a property's increased equity between marital and nonmarital interests.") And in *Stroh,* this court defined the *Schmitz* "rationale" as follows:

> Except for a proportion of appreciation that is determined exclusively by considering an identified nonmarital investment, any other appreciation is subject to the statutory presumption that property acquired after marriage is marital property.

383 N.W.2d at 405.

 Accordingly, the Schmitz formula should be used to apportion an increase in the property's value only if that property has an identified nonmarital component. In this case, respondent had a nonmarital interest in the home's equity when the parties married. To determine whether he retained this nonmarital interest after the refinancing and, subsequently, whether the Schmitz formula applies, we turn to the tracing cases.

 Minnesota courts may trace a current asset to a nonmarital source. Minn. Stat. § 518.54, subd. 5(c). To claim a nonmarital interest in a current asset, a party must "show by a preponderance of the evidence that the asset was acquired in exchange for nonmarital property." *Carrick v. Carrick,* 560 N.W.2d 407, 413 (Minn.App.1997). Here, when the parties refinanced the home, *all of the equity in the home, including respondent's nonmarital share, was extinguished.* The money from this refinancing was used to purchase furniture and for home improvements; *it did not go toward payments on the home.* And not only does the record not address how much of the home improvements were paid for with the refinancing funds, but the parties agreed that the refinancing

proceeds were jointly used during the marriage. Thus, respondent presented no evidence indicating that an identifiable portion of the current equity was acquired with the proceeds of his original nonmarital interest in the home. *See Prahl v. Prahl,* 627 N.W.2d 698, 705 (Minn.App. 2001) (nonmarital asset commingled with marital asset may lose its nonmarital status if it cannot be traced to nonmarital source).

Because no identifiable portion of the home's current equity can be traced to a nonmarital source, the presumption that all of the equity is marital property has not been rebutted and the Schmitz formula does not apply. The district court erred in finding that respondent had a nonmarital share in the home's current equity.

### II. Calculation of Cash Settlement

Both parties argue that the district court erred when calculating the cash settlement. The district court subtracted the amount appellant owed respondent for other reimbursements ($5,215) from the amount she was entitled to receive ($4,651) and determined that appellant owed respondent $564.

This approach is incorrect for two reasons. First, it is based on the district court's decision that respondent had an 80% nonmarital portion of the home's current equity. Second, under this approach, respondent is not reimbursed his portion of the money that appellant removed from her 401K plan. Consistent with the agreement of counsel for both parties at oral argument before this court, the cash settlement should be determined by determining the difference in what the parties owe each other.

*Respondent Owes Appellant*

$10,260 (½ of marital homestead equity)

TOTAL: $10,260

*Appellant Owes Respondent*

$2,599 (half of 401K)
$1,160 (mortgage)
$ 456 (utilities)
$1,000 (temporary order sanction)

TOTAL: $5,215

Thus, respondent owes appellant $5,045 ($10,260 minus $5,215).

### DECISION

The district court's holding that respondent retained a nonmarital percentage in the home's current equity is reversed. We remand for proper calculation of the cash settlement in accordance with this opinion.

**Reversed and remanded.**